Filed 1/30/15  P. v. Allen CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ERNEST LEE ALLEN,<br><br>    Defendant and Appellant. | F067704<br><br>(Super. Ct. No. CF97598580)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Michael Satris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING OPINION**

**INTRODUCTION**

The Three Strikes Reform Act of 2012 (hereafter Proposition 36 or the Act) created a postconviction release proceeding for third strike offenders serving indeterminate life sentences for crimes that are not serious or violent felonies. If such an inmate meets the criteria enumerated in Penal Code section 1170.126, subdivision (e), he or she will be resentenced as a second strike offender unless the court determines such resentencing would pose an unreasonable risk of danger to public safety.[1] (§ 1170.126, subd. (f); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)

After the Act went into effect, Ernest Lee Allen (defendant), an inmate serving a term of 25 years to life following conviction of a felony that was not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition for recall of sentence and request for resentencing under the Act. Finding defendant posed an unreasonable risk and danger to the community should he be resentenced, the trial court denied defendant's petition.

We reject defendant's claims, inter alia, that the trial court's determination of dangerousness must be reviewed for substantial evidence, the court "misapprehend[ed]" the burden of proof and scope of its discretion, the court had to explore placement possibilities for defendant and weigh fiscal considerations, and the court failed to consider all relevant evidence and criteria. We further conclude recently enacted section 1170.18, subdivision (c) does not modify section 1170.126, subdivision (f). We hold the court did not abuse its discretion by denying defendant's petition and we affirm.

**FACTS AND PROCEDURAL HISTORY**

On September 2, 1997, defendant, and the woman who was the mother of his child and with whom he lived, went to the Department of Social Services in Fresno County. Defendant had been drinking. While waiting in line, he began to yell at the woman, then,

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

after threatening to beat her, grabbed her by the shirt and dragged her, kicking and screaming, across the floor. He pushed her through the front doors and threw her down on the sidewalk. A security guard intervened just as defendant raised his hand to strike the woman. Defendant ran away, threatening to return later.

On January 23, 1998, a jury convicted defendant of felony spousal abuse. (§ 273.5.) Defendant pled guilty to a misdemeanor battery charge (§ 242) arising out of an incident that occurred August 31, 1996, and the court found he had suffered two prior strike convictions (§ 667, subds. (b)-(i)). On February 20, 1998, defendant was sentenced to prison for 25 years to life.

On December 19, 2012, defendant filed a petition for recall of sentence and request for resentencing hearing under section 1170.126. The trial court appointed counsel for defendant, and directed the parties to submit briefs addressing all relevant issues including defendant's criminal conviction history, disciplinary record and record of rehabilitation while incarcerated, and any other evidence the parties wished to submit regarding risk of danger to public safety.[2]

On February 26, 2013, defense counsel filed a more complete recall petition. Counsel asserted defendant's prior strike offenses consisted of 1985 convictions for voluntary manslaughter and assault with a deadly weapon; and the remainder of defendant's criminal conviction history consisted of a 1992 conviction for sexual battery (with violations of probation in 1992 and 1997), a 1981 conviction for battery, a 1976 violation of a protective order, and a 1974 conviction for burglary. Defendant's in-prison disciplinary record was not yet available, but counsel submitted three certificates of completion/achievement. Counsel also submitted a letter from defendant, in which

---

[2]     The judge who imposed defendant's third strike sentence was no longer a member of the Fresno County bench, so the matter was handled by a different judge. (See § 1170.126, subd. (j).)

defendant explained an in-prison fight. Counsel argued defendant's two prior strike offenses occurred over 27 years before, and that they were related to drug and alcohol abuse.

The People requested additional time to obtain all relevant information, particularly defendant's prison records. They did, however, lodge information concerning defendant's prior convictions and related probation officer's report. The report listed defendant's year of birth as 1956. It described an event that occurred on March 3, 1985, during which defendant shot a woman in the head causing her to lose an eye. Defendant had previously cohabited with the woman and she was the mother of his then-two-year-old child. Before shooting her, defendant told her, "'If I can't have you, can't nobody have you.'" Defendant also shot the woman's mother twice, once in the chest, killing her. Defendant told the mother of his child, "'This is going to hurt you more than me,'" as he shot her mother the second time. He then left the residence, locking the front door. He later turned himself in to the police and was charged with murder. At the time of the offense, defendant had a blood-alcohol level of 0.23 percent. The report listed an "indication" defendant had "a history of substance abuse including alcohol and inhalants." Defendant reported a history of psychological problems.

Defense counsel subsequently filed a supplemental recall petition that contained additional "chronos" showing defendant's educational achievements in custody and a letter of support from defendant's brother. Counsel represented defendant had been classified with the Mental Health Services Delivery System and Enhanced Outpatient Program (EOP) throughout his incarceration, but could take care of himself, and should be able to do so once released. Defendant would, however, need assistance obtaining disability income and housing.

The People opposed resentencing arguing it would pose an unreasonable danger to public safety. They cited to defendant's criminal history which, they argued, was lengthy and showed great violence in domestic circumstances. They pointed to his failure to

4.

benefit from repeated efforts by society to correct his behavior. They argued defendant's persistent inability or unwillingness to program in a productive manner, his unresolved mental health issues, current need for psychotropic medications, and continued need for EOP or psychiatric services. They set out his in-prison disciplinary history arguing his proclivity toward violence in spite of medication. There were four findings of behavior conducive to violence: in 2011 defendant was involved in a race/gang-related incident involving a verbal argument that escalated to clenched fists and fighting stances; in 2004 defendant was involved in a mutual combat; in 2000 defendant disobeyed a direct order, took a "bladed" stance and said he would not be taken to the acute care hospital for psychiatric evaluation; and in 1999 defendant and another inmate faced each other in a fighting stance and threatened to fight.[3] The People acknowledged defendant's prison classification score was low, but argued he had failed to engage in any meaningful self-help, work, vocational training, or education. They also noted he had no postrelease plans.

Defense counsel subsequently submitted a number of defendant's mental health and medication records. Counsel argued, while defendant had been diagnosed with major depressive disorder and recurrent and psychotic disorder, he was not considered a danger to himself or others; he had participated in extensive therapy sessions while incarcerated; and he had a good record with his prescribed medications, which he had taken daily for over 15 years. Counsel furnished portions of defendant's mental health treatment plans, showing defendant's participation in various self-help and similar programs for the years 2001 through 2003. Counsel also submitted his own declaration, setting out a conversation he had with a staff psychiatrist and staff psychologist at San Quentin State Prison. Those persons represented that defendant was transferred to San Quentin in mid-

---

**3** For ease of reading, some formatting (such as boldface or capitalization) has been omitted from our quotations from the documentary evidence.

5.

2012 due to the perception that a higher level of mental health care was required for him than had been available at Corcoran. Since his transfer, it was the opinion of Dr. Miller, who most recently treated defendant, that defendant's mental health condition had stabilized to the point he would only require a basic level of mental health care — either on a residential or out-patient basis — should he be released from prison. The records showed defendant was on two primary medications: Risperidone, an antipsychotic medication; and Zoloft, and antidepressant medication. He was also receiving Cogentin for the possible side effects of Risperidone.

On June 28, 2013, the court referred the matter to the probation department for a supplemental report that was to include information regarding the possibility of supervision under postrelease community supervision (PRCS), and of mental health services. The court also appointed Dr. Terrell, who was board certified in psychiatry and forensic psychiatry, to examine defendant.

Prior to the hearing on the petition, the court received a report from EIS-Consultation Services for the Criminal Justice System detailing that group's efforts with defense counsel to find community supportive services for defendant, should he be resentenced. The report outlined various possible living and treatment scenarios, but concluded ongoing services could not be readily achieved.

Terrell conducted a 55-minute forensic psychiatric evaluation of defendant on July 6, 2013. In addition to the pleadings filed by the parties, Terrell considered documentation from the California Department of Corrections and Rehabilitation (CDCR). He noted defendant was 56 years old and had been incarcerated for most of his adult life. Defendant reported he last experienced hallucinations and paranoia around 2000, and had not received antipsychotic medication since approximately March 2013 although he continued to receive antidepressant medication. Defendant further related he

last used street drugs approximately 15 years earlier.[4]  Defendant stated that, if released, he would live with his cousin.  He received disability benefits for mental illness prior to his incarceration, had done farm labor work in the past, and kitchen work while in CDCR.  His brother had offered to help him financially.  Defendant said he would report to Fresno County Mental Health to obtain psychiatric treatment if released, and would do whatever the doctor recommended.

Terrell found defendant's reality contact to be good and his judgment fair, but his insight extremely poor.  Terrell gave defendant a number of diagnoses, most of which were in institutional remission.  He determined the most likely cause of defendant's violent criminal behavior over the years was antisocial personality disorder combined with a long-standing history of substance abuse, and complicated by major depressive episodes with psychotic features.  Terrell expressed "grave[] concern[]" over defendant's "extremely poor insight and complete lack of remorse for his violent actions," and found defendant's lack of insight, lack of guilt, and lack of any evidence of remorse represented "very ominous signs for the possibility of success" if defendant were released back into the community.  Because of the lack of evidence of remorse, guilt, or insight, Terrell opined defendant would be "a very high risk" of resuming his abuse of street drugs and alcohol which, combined with defendant's antisocial personality, would put defendant at "an extremely-high risk" of paranoia, psychosis, and a repeat of "extremely violent" behavior.  Terrell believed there was an "extremely high likelihood" that, if released, defendant would "resume his pathological behavior and soon become a very high risk of imminent danger to the community."  Accordingly, Terrell recommended "release be denied."

---

**4**     Defendant reported sniffing paint off and on in the late 1970's and early 1980's, frequently abusing alcohol in the 1970's to 1990's, using PCP in the 1980's, and trying cocaine in the 1980's.

The probation officer recommended that, although defendant was not disqualified from resentencing, he should not be resentenced because of his prior record (criminal behavior with primarily violent crimes for almost 40 years), the circumstances of the commitment offense, his behavior in custody, and Terrell's report. The probation officer pointed out that, after shooting the mother of one of his children and taking her mother's life, defendant continued to engage in behavior in prison that could lead to violence.

The petition was heard July 26, 2013. The People maintained their opposition to resentencing describing it as "amplified … by Dr. Terrell's report" and stating "the interest in community safety is the paramount consideration." Defense counsel argued defendant's housing was "a work in progress," and pointed out defendant might be able to live in Westcare and that it would be easier to provide things such as mental health services once defendant's social security benefits were reinstated. Defense counsel argued that Terrell spent little time with defendant, while defendant's mental health condition, though still "a work in progress," impressed the CDCR doctors who had worked with him for a number of years. Counsel suggested Terrell's concern with defendant's tendency to minimize and find justifications for the past incidents was a moral judgment, rather than a professional one. Counsel argued defendant's criminal history was not "exceptionally voluminous," asserted most of defendant's in-prison violations were "early on in the process," and noted defendant's classification score still had been reduced over time from 58 to 19, the lowest score that could be given a life inmate. Counsel also argued defendant was 57 years old and, according to statistics, became less of a risk as he aged.

The trial court denied the petition. It stated in part:

"Much of this is beyond [defendant's] control, which is actually the concern of the Court. [Defendant] suffers from substantial mental health problems, significant mental health problems.

8.

"So the record is clear, his initial offense was a manslaughter in 1985. There is subsequent violent behavior in 1998, a 273.5, which was a strike. But between the manslaughter and the third strike, he has more assaultive behavior, a 243.4, 242, a violation of the Court's stay away prior to that. He has discipline in [prison] including mutual combat in 2004 and an incident 8/13 of 2011, that was described as 'could lead to violence.'

"Significantly, Dr. Terrell states, 'his lack of insight, lack of guilt, and lack of any evidence of remorse represents an ominous sign.' I understand your argument, [defense counsel], that that plays into his mental health issue. But then Dr. Terrell continues, 'That there is an extremely highly [*sic*] likelihood if released from CDCR, that [defendant] will begin pathological behavior, and soon become a high risk of eminent [*sic*] danger.'

"I — this is perhaps a textbook example of the necessity of appropriate mental health services to be provided to an inmate. I am not saying from a judicial perspective that the Department of Corrections has failed to provide those services to [defendant], but whatever services had been provided to [defendant] has not assisted him in a recovery. He still remains a significant danger to the community. For those reasons, his petition for resentencing is denied, and the original sentence stands. [¶] … [¶] … I'm finding … there is an unreasonable risk of danger to the community should [defendant] be resentenced; therefore, his petition for resentencing is denied."

## DISCUSSION

### I

#### APPLICABLE LEGAL PRINCIPLES

In order to be eligible for resentencing as a second strike offender under the Act, the inmate petitioner must satisfy the three criteria set out in subdivision (e) of section 1170.126.[5] (*People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979,

---

[5] "An inmate is eligible for resentencing if: [¶] (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7. [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or

9.

989.)  If the inmate satisfies all three criteria, as did defendant, he or she "shall be resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)  In exercising this discretion, "the court may consider: [¶]  (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes;  [¶]  (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and  [¶]  (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."  (*Id.*, subd. (g).)

A.  **A TRIAL COURT'S ULTIMATE DETERMINATION REGARDING DANGEROUSNESS LIES WITHIN ITS DISCRETION; ITS RULING, THEREFORE, IS REVIEWED FOR ABUSE OF DISCRETION.**

Defendant argues the trial court's decision regarding dangerousness should be reviewed for substantial evidence.[6]  We disagree.  The plain language of subdivisions (f) and (g) of section 1170.126 calls for an exercise of the sentencing court's discretion.  "'Discretion is the power to make the decision, one way or the other.'  [Citation.]"

---

clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12.  [¶]  (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."  (§ 1170.126, subd. (e).)

[6]     The substantial evidence test applies to an appellate court's review of findings made under the preponderance of the evidence standard.  (*People v. Wong* (2010) 186 Cal.App.4th 1433, 1444.)  Under that test, the appellate court reviews the record in the light most favorable to the challenged finding, to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make the finding by a preponderance of the evidence.  The appellate court "resolve[s] all conflicts in the evidence and questions of credibility in favor of the [finding], and … indulge[s] every reasonable inference the [trier of fact] could draw from the evidence. [Citation.]"  (*Ibid.*)

(*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse-of-discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

Under the clear language of section 1170.126, the ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. We, therefore, review that determination for abuse of discretion. Of course, if there is no evidence in the record to support the decision, the decision constitutes an abuse of discretion. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.)

**B.** **THE BURDEN OF PROOF IS PREPONDERANCE OF THE EVIDENCE AND IT APPLIES TO PROOF OF THE FACTS, NOT TO THE TRIAL COURT'S ULTIMATE DETERMINATION.**

Defendant asserts the trial court misapprehended the burden of proof; that *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) requires resentencing not be denied due to dangerousness unless the People have proved dangerousness beyond a reasonable doubt.[7]

> "The standard of proof, the United States Supreme Court has said, 'serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.' [Citation.] At one

---

[7] The Attorney General contends defendant forfeited any claims concerning the standard/burden of proof by failing to present them in the trial court. We have the authority to reach defendant's claims, regardless. (*People v. Smith* (2003) 31 Cal.4th 1207, 1215; *People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6.) In light of the newness of the Act at the time defendant's petition was heard, as well as the potential for an allegation that failure to raise the issues constituted ineffective assistance of counsel, we review the claims on the merits. (See *People v. Crittenden* (1994) 9 Cal.4th 83, 146.)

end of the spectrum is the 'preponderance of the evidence' standard, which apportions the risk of error among litigants in roughly equal fashion. [Citation.] At the other end of the spectrum is the 'beyond a reasonable doubt' standard applied in criminal cases, in which 'our society imposes almost the entire risk of error upon itself.' [Citation.] Between those two standards is the intermediate standard of clear and convincing evidence. [Citation.] These three standards are codified in California's Evidence Code. Section 115 of that code states: 'The burden of proof may require a party to … establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. [¶] *Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.*' (Italics added.)

"If the Legislature has not established a standard of proof, a court must determine the appropriate standard by considering all aspects of the law. [Citation.] No standard of proof is specified in section [1170.126] .…

"'The standard of proof that is required in a given instance has been said to reflect "… the degree of confidence our society thinks [the fact finder] should have in the correctness of factual conclusions for a particular type of adjudication." … The standard of proof may therefore vary, depending upon the gravity of the consequences that would result from an erroneous determination of the issue involved.' [Citations.]" (*People v. Arriaga* (2014) 58 Cal.4th 950, 961-962.)

"In enacting section 1170.126 as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term." (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1036.) Although voters could have permitted automatic resentencing, under any and all circumstances, of those eligible therefor, they did not do so. This demonstrates a recognition of two highly plausible scenarios: (1) Some inmates sentenced to indeterminate terms under the original version of the three strikes law for crimes not defined as serious or violent felonies may have started out not posing any greater risk of danger than recidivists who will now be sentenced to determinate terms as second strike offenders under the prospective provisions of the Act, but have become violent or otherwise dangerous while

12.

imprisoned, or (2) Enough time might have passed since some inmates committed their criminal offenses so that those offenses no longer make such inmates dangerous, but other factors do. Because of the severe consequences to society that may result if a dangerous inmate is resentenced as a second strike offender and released to the community upon completion of his or her term with little or no supervision (see, e.g., § 3451) and without undergoing any suitability assessment (see, e.g., *In re Lawrence* (2008) 44 Cal.4th 1181, 1204), we believe it appropriate to apportion the risk of error in roughly equal fashion.

Division Three of the Second District Court of Appeal has similarly so found. It has stated that, where a court's discretion under section 1170.126, subdivision (f) is concerned, the People bear the burden of proving "dangerousness" by a preponderance of the evidence. (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1301- 1305 & fn. 25 (*Kaulick*); see Evid. Code, § 115.) That court determined this is so because "dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all." (*Kaulick*, *supra*, at p. 1303.) *Kaulick* explained:

> "The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While [the Act] presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (*Ibid.*)

In *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1059-1062 (*Blakely*), we rejected the claim an inmate seeking resentencing pursuant to section 1170.126 had a Sixth Amendment right to a jury determination, beyond a reasonable doubt, on the question of conduct constituting a disqualifying factor. We concluded that *Apprendi*, *supra*, 530 U.S. 466 and its progeny (e.g., *Alleyne v. United States* (2013) 570 U.S. ___

13.

[133 S.Ct. 2151]; *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*); *Blakely v. Washington* (2004) 542 U.S. 296) "do not apply to a determination of eligibility for resentencing under the Act." (*Blakely*, *supra*, 225 Cal.App.4th at p. 1060.) We also relied heavily on *Kaulick*.

In rejecting application of the beyond a reasonable doubt standard, *Kaulick* discussed the United States Supreme Court's conclusion in *Dillon v. United States* (2010) 560 U.S. 817, 828 (*Dillon*), that "a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws."[8] (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304.) *Kaulick* found *Dillon*'s language applicable. Since the retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate and provides for a proceeding where the original sentence may be modified downward, any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt. (*Kaulick*, *supra*, at pp. 1304-1305.)

Although in *Blakely*, we applied *Kaulick*'s analysis to the initial determination of eligibility for resentencing under the Act (*Blakely*, *supra*, 225 Cal.App.4th at p. 1061), it applies equally to the issue whether resentencing the petitioner would pose an unreasonable risk of danger to public safety. A denial of an inmate's petition does not increase the penalty to which that inmate is already subject, but instead removes the inmate from the scope of an act of lenity on the part of the electorate to which he or she is not constitutionally entitled. (*Id.* at p. 1062.) That the denial is based on a determination of dangerousness does not change that conclusion.

---

**8**    *Pepper v. United States* (2011) 562 U.S. 476 [131 S.Ct. 1229] does not undermine *Dillon*'s or *Kaulick*'s reliance thereon. Unlike *Dillon*, *Pepper* involved a plenary resentencing after the defendant's sentence had been set aside on appeal. (*Pepper*, *supra*, 562 U.S. at p. ___ [131 S.Ct. at p. 1236].)

14.

We hold preponderance of the evidence is the applicable standard of proof, regardless whether we analyze the issue as one of Sixth Amendment jurisprudence or due process. (See *People v. Flores* (2014) 227 Cal.App.4th 1070, 1076.)[9]

This does not, however, mean the trial court must apply that standard in making its ultimate determination whether to resentence a petitioner, or we must review that determination for substantial evidence. Nor does it mean evidence of dangerousness must preponderate over evidence of rehabilitation for resentencing to be denied.

The language of section 1170.126, subdivision (f) expressly provides the petitioner shall be resentenced unless the court, in its discretion, makes a determination that resentencing would pose an unreasonable risk of danger. The statute does not say the petitioner shall be resentenced unless the People prove resentencing would pose such a risk.

Considering the language of subdivisions (f) and (g) of section 1170.126, we conclude the People have the burden of establishing, by a preponderance of the evidence, facts from which a determination resentencing the petitioner would pose an unreasonable risk of danger to public safety can reasonably be made. The reasons a trial court finds resentencing would pose an unreasonable risk of danger, or its weighing of evidence showing dangerousness versus evidence showing rehabilitation, lie within the court's discretion. The ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. While the determination must be supported by facts established by a preponderance, the trial court need not itself find an unreasonable risk of danger by a preponderance of the evidence. (See *In re Robert L.*, *supra*, 21 Cal.App.4th

---

[9] We recognize that in the case of people who are involuntarily committed as narcotics addicts or for analogous reasons, the California Supreme Court has found the appropriate standard of proof to be beyond a reasonable doubt. (See, e.g., *People v. Thomas* (1977) 19 Cal.3d 630, 637-638.) Defendant received the protections of that standard of proof (and the right to a jury trial) at the time he was found to have suffered his prior strike convictions, however. (*People v. Nguyen* (2009) 46 Cal.4th 1007, 1015; *People v. Towers* (2007) 150 Cal.App.4th 1273, 1277.)

at pp. 1065-1067 [discussing abuse of discretion and preponderance of the evidence standards].)

*Kaulick* found the prosecution bears the burden of establishing "dangerousness" by a preponderance of the evidence against a claim the *Apprendi* line of cases requires proof beyond a reasonable doubt. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1302.) As a result, it had no real occasion to address the interplay between the burden of proof and the trial court's exercise of discretion as that issue is presented here, or to clarify whether the prosecution is required to establish "dangerousness" in the sense of *facts* upon which the trial court can base the ultimate determination resentencing a petitioner would pose an unreasonable risk of danger to public safety, or in the sense of establishing that determination itself.[10] Nevertheless, we believe it supports our interpretation.

Such an interpretation is consistent with California's noncapital sentencing scheme.[11] Under the determinate sentencing law (DSL) as it existed prior to *Cunningham*, "three terms of imprisonment [were] specified by statute for most offenses. The trial court's discretion in selecting among [those] options [was] limited by section 1170, subdivision (b), which direct[ed] that 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'" (*People v. Black* (2007) 41 Cal.4th 799, 808, fn. omitted.) Trial courts had "broad discretion" to impose the lower or upper term instead of the middle term of imprisonment (*People v. Scott* (1994) 9 Cal.4th 331, 349), and generally were required by

---

**10** As noted, *ante*, we have previously discussed *Kaulick* in the context of the initial determination whether an inmate is eligible for resentencing under the Act. (*Blakely*, *supra*, 225 Cal.App.4th at pp. 1058, 1060-1061; *People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1033, 1039-1040.) Nothing we say here should be taken as disagreement with or modification of those opinions. We deal here with a different aspect of the retrospective portion of the Act and a subject not before us in our prior cases.

**11** The determination of the appropriate penalty in a capital case "'is "essentially moral and normative …, and therefore … there is no burden of proof or burden of persuasion. [Citation.]" [Citation.]' [Citations.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1362.)

the statutes and sentencing rules to state reasons for their discretionary sentencing choices (*ibid*.). Such reasons had to be "supported by a preponderance of the evidence in the record" and reasonably related to the particular sentencing determination. (*Ibid*.; see former Cal. Rules of Court, rule 4.420(b).) Even after the DSL was reformed and amended in response to *Cunningham*, so as to eliminate judicial factfinding in selection of the appropriate term when three possible prison terms are specified by statute, establishment of facts by a preponderance of the evidence remains necessary with respect to certain discretionary sentencing decisions. (See *In re Coley* (2012) 55 Cal.4th 524, 557-558.)[12]

In *People v. Sandoval* (2007) 41 Cal.4th 825, 850-851, the California Supreme Court stated that, in making its discretionary sentencing choices post-*Cunningham*, "the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, *apply a preponderance of the evidence standard*, or specify the 'ultimate facts' that 'justify[] the term selected.' [Citations.] Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' [Citation.]" (Italics added.)

The trial court's ultimate determination when considering a petition for resentencing under section 1170.126 is analogous to an evaluation of the relative weight of mitigating and aggravating circumstances. Such an evaluation "is not equivalent to a factual finding." (*People v. Black*, *supra*, 41 Cal.4th at p. 814, fn. 4.) It follows, then, that the trial court need not apply a preponderance of the evidence standard, in that it need not find resentencing the petitioner would, more likely than not, pose an

---

**12** After *Cunningham* concluded the DSL violated a defendant's Sixth Amendment right to a jury trial (*Cunningham*, *supra*, 549 U.S. at p. 281), the Legislature amended section 1170 so that now "(1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992.) Subdivision (b) of section 1170 states the court "shall select the term which, in the court's discretion, best serves the interests of justice."

17.

unreasonable risk of danger to public safety.  (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1305, fn. 28 [preponderance standard means "'more likely than not'"].)

To summarize, a trial court need not determine, by a preponderance of the evidence, that resentencing a petitioner would pose an unreasonable risk of danger to public safety before it can properly deny a petition for resentencing under the Act.  Nor is the court's ultimate determination subject to substantial evidence review.  Rather, its finding will be upheld if it does not constitute an abuse of discretion, i.e., if it falls within "the bounds of reason, all of the circumstances being considered.  [Citations.]"  (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)  The facts or evidence upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence, however, and are themselves subject to our review for substantial evidence.[13]  If a factor (for example, that the petitioner recently committed a battery, is violent due to repeated instances of mutual combat, etc.) is not established by a preponderance of the evidence, it cannot form the basis for a finding of unreasonable risk. (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court abuses its discretion when factual findings critical to decision find no support in record]; cf. *People v. Read* (1990) 221 Cal.App.3d 685, 689-691 [where trial court erroneously determined defendant was statutorily ineligible for probation, reviewing court was required to determine whether trial court gave sufficient other reasons, supported by facts of case, for probation denial].)

C.  **SECTION 1170.126 DOES NOT ESTABLISH OR CONTAIN A PRESUMPTION A PETITIONER'S SENTENCE BE REDUCED.**

Defendant essentially argues, however, that sentence reduction under the Act is now the rule, not the exception.  This being the case, he says, trial courts have only

---

**13**     We agree with defendant that "substantial evidence," not the significantly more deferential "some evidence" standard applicable to review of executive branch decisions in parole cases (see *In re Rosenkrantz* (2002) 29 Cal.4th 616, 658, 665), is the appropriate appellate standard.

limited or "narrowly-circumscribed" discretion in denying relief on the ground of unreasonable danger to public safety.

First, defendant argues a section 1170.126 resentencing "is the converse of" a *Romero* hearing and establishes a presumption that the life term be reduced to a second strike sentence.

In *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), the California Supreme Court held that trial courts retain discretion to strike, in furtherance of justice under section 1385, subdivision (a), prior felony conviction allegations in cases brought under the three strikes law. (*Romero*, *supra*, at pp. 529-530.) The court subsequently clarified, however, that in deciding whether to do so, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Because the three strikes law was intended to restrict trial courts' discretion in sentencing repeat offenders, the state high court determined there were "stringent standards" sentencing courts must follow in order to find a defendant should be treated as falling outside the three strikes scheme. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) The court explained:

> "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.
>
> "In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial

19.

court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] … Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)

As we explained in *Blakely*, *supra,* 225 Cal.App.4th at page 1054, "The purpose of the three strikes law has been variously stated as being '"to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses"' [citation] and 'to promote the state's compelling interest in the protection of public safety and in punishing recidivism' [citation]. Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]." Because public safety remains a key purpose of the law under the Act, we reject defendant's assertion that a section 1170.126 proceeding is the converse of a *Romero* determination, so that any refusal to resentence an eligible inmate must be subjected to the same rigorous scrutiny as the granting of a *Romero* motion.[14]

---

**14** Because a trial court can deny resentencing under section 1170.126, subdivision (f), only upon a finding of unreasonable risk of danger to public safety, a trial court would abuse its discretion, as in a *Romero* situation, by refusing to resentence a petitioner because of antipathy toward the Act or a personal belief a particular defendant deserved an indeterminate term for reasons other than dangerousness. (See *People v. Williams*, *supra*, 17 Cal.4th at pp. 159, 161.)

Second, defendant points to the syntax of section 1170.126, subdivision (f). Relying on *People v. Guinn* (1994) 28 Cal.App.4th 1130, 1141-1142, 1145 and its progeny (e.g., *People v. Murray* (2012) 203 Cal.App.4th 277, 282; *People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1089), all of which deal with section 190.5, subdivision (b), defendant contends the "shall"/"unless" formulation employed in subdivision (f) of section 1170.126 "establishes a presumption in favor of resentencing, with a sentencing court's discretion to depart from that generally mandatory prescription narrowly circumscribed and reserved for extraordinary cases."[15]  Because resentencing an eligible petitioner to a second strike term is the "'generally mandatory' disposition," defendant argues, a trial court retains only "'circumscribed' discretion upon proof of an 'unreasonable' danger to 'public safety' to leave intact the more draconian punishment that the … Act now abolishes."

The California Supreme Court recently disapproved the cases relied on by defendant.  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1370, 1387.)  Leaving aside constitutional questions raised by establishing a presumption in favor of life without parole for juveniles after the United States Supreme Court's opinion in *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455], the state high court's review of the text of section 190.5, subdivision (b) led it to conclude the syntax is ambiguous concerning any presumption.  The court stated:  "It is not unreasonable to read this text … to mean that a court 'shall' impose life without parole unless 'at the discretion of the court' a sentence of 25 years to life appears more appropriate.  [Citation.]  But it is equally reasonable to

---

[15]    Section 190.5, subdivision (b) provides, in pertinent part:  "The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances … has been found to be true …, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life."

21.

read the text to mean that a court may select one of the two penalties in the exercise of its discretion, with no presumption in favor of one or the other. The latter reading accords with common usage. For example, if a teacher informed her students that 'you must take a final exam or, at your discretion, write a term paper,' it would be reasonable for the students to believe they were equally free to pursue either option. The text of section 190.5[, subdivision ](b) does not clearly indicate whether the statute was intended to make life without parole the presumptive sentence." (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1371.)

The same example can be applied to the syntax of section 1170.126, subdivision (f). Thus, we do not agree with defendant that resentencing to a second strike term is the generally mandatory disposition, subject only to circumscribed discretion to retain the indeterminate third strike term. A court considering whether to resentence an eligible petitioner under section 1170.126, subdivision (f) has circumscribed discretion in the sense it can only refuse to resentence if it finds that to do so would pose an unreasonable risk of danger to public safety on the facts of the particular case before it. This does not mean, however, its discretion is circumscribed in the sense it can only find dangerousness in extraordinary cases. To the contrary, it can do so in any case in which such a finding is rational under the totality of the circumstances.

Such a conclusion comports with the plain language of the statute. Moreover, a conclusion there is a strong presumption in favor of resentencing that will only be overcome in an extraordinary case, due to the trial court's circumscribed discretion, would run directly contrary to the intent of the voters in passing the Act. (See *People v. Gutierrez*, *supra*, 58 Cal.4th at pp. 1371-1372 [examining legislative history and voter intent in attempt to resolve statutory ambiguity].) As we stated in *People v. Osuna*, *supra*, 225 Cal.App.4th at page 1036, "'[e]nhancing public safety was a key purpose of the Act' [citation]." Thus, although one purpose of the Act was to save taxpayer dollars (*People v. Osuna*, *supra*, at p. 1037), "[i]t is clear the electorate's intent was not to throw

open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but *only* to those who were perceived as nondangerous or posing little or no risk to the public." (*Id*. at p. 1038, second italics added.) Had voters intended to permit retention of an indeterminate term only in extraordinary cases, they would have said so in subdivision (f) of section 1170.126, rather than employing language that affords courts broad discretion to find dangerousness. They also would not have afforded the court the power to consider any evidence it determined to be relevant to the issue as they did in subdivision (g)(3) of the statute.

## II

### THE TRIAL COURT'S RULING

Applying the foregoing principles to the trial court's ruling, we find no abuse of discretion. Several of defendant's assertions require brief discussion, however.

First, defendant claims that, given the "strong basis" for his past behavior in his mental illness coupled with substance abuse and his low intellectual ability, the trial court "was required to explore the possibilities of placement for [defendant] upon resentencing that could be available and which could address any concerns regarding unpredictability due to his mental condition and low intellectual functioning before peremptorily slamming the door under the Act …." The terms of the court's referral of the matter to the probation department for a supplemental report and its consideration of the EIS report show the court did indeed explore the possibilities of appropriate placement.

Defendant appears to recognize this fact when he says "explorative efforts had been made to identify a residential group setting to which [defendant] could be released in which his life would be structured and supervised and he would receive support." He argues, however, that the problems found by Terrell (e.g., the likelihood defendant would again abuse substances once released) would have been ameliorated if social services could place defendant in a supervised, structured group home where he could be monitored and receive appropriate support services. Defendant says: "That such

23.

placement had not yet been found at the time of the hearing here did not mean that such placement was forever unavailable"; hence, the trial court "was obliged to leave such avenue open for a reasonable time." But the section 1170.126 hearing had to be held at some point or another. Moreover, it appears, from the EIS report, that even if an appropriate placement could have been found, it would have taken several months for defendant to be admitted, either because of space considerations or because he could not afford to pay until his social security benefits were reinstated, something that could not occur until he was released from prison. The problem here is that if defendant relapsed — something Terrell, an expert, felt likely if defendant were simply released back into the community — there was a strong probability defendant would not merely return to property crimes, but would revert to the sort of violent behavior that had marred his past and resulted in him being sentenced to a third strike term in the first place. Under the circumstances, we do not believe the trial court was required to resentence him and then cross its fingers.**16**

Defendant also contends the trial court failed to credit the evidence defendant had not used alcohol or drugs for the last 15 years, despite their wide availability in prison, and that he was compliant with the prescribed treatment program for his mental illness. Defendant also says the trial court failed to consider evidence with regard to the criteria set out in section 1170.126, subdivision (g), such as the remoteness of defendant's crimes and his low classification score. These matters were, however, all before the court through reports, the parties' pleadings, or argument. That the court did not expressly

---

**16** Had defendant been resentenced, he would have been subject to mandatory PRCS upon release. (*People v. Tubbs* (2014) 230 Cal.App.4th 578, 585-586; *People v. Espinoza* (2014) 226 Cal.App.4th 635, 637-638.) The trial court considered the possibility of PRCS, however, and nothing in the record suggests such supervision would have been sufficient to meet defendant's needs so as to allay public safety concerns, especially in light of Terrell's conclusions.

24.

mention them does not mean it failed to consider them and, in the absence of any showing to the contrary, we presume it did so. (Evid. Code, § 664; see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; cf. *People v. Sparks* (1968) 262 Cal.App.2d 597, 600-601.)

Finally, defendant contends that, in light of the Act's express purpose of "a more rational and cost-effective allocation of the crippling expenses of California's prison system," trial courts are required to weigh fiscal considerations in deciding resentencing petitions, something the trial court here did not do. In our view, the notion that the cost of incarceration has some bearing on whether resentencing a particular inmate would pose an unreasonable risk of danger to public safety is a non sequitur. Although saving money is a goal of the Act, it does not override the primary purpose of the three strikes law and the Act as a whole — the protection of public safety. (See *People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1036-1038.) The trial court was not required to take the cost of continued imprisonment into account or undertake the equivalent of a cost-benefit analysis in determining whether resentencing defendant would pose an unreasonable risk of danger to public safety; the Act already did so, and the electorate has determined keeping criminals who pose an unreasonable risk of danger to public safety behind bars for their full three strikes sentence is more important than saving money.

## III

### SECTION 1170.18, SUBDIVISION (C)

On November 4, 2014, voters enacted Proposition 47, "the Safe Neighborhoods and Schools Act" (hereafter Proposition 47). It went into effect the next day. (Cal. Const., art. II, § 10, subd. (a).) Insofar as is pertinent here, Proposition 47 renders misdemeanors certain drug- and theft-related offenses that previously were felonies or "wobblers," unless they were committed by certain ineligible defendants. Proposition 47 also created a new resentencing provision — section 1170.18 — by which a person currently serving a felony sentence for an offense that is now a misdemeanor, may

25.

petition for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47. (§ 1170.18, subd. (a).) A person who satisfies the criteria in subdivision (a) of section 1170.18 shall have his or her sentence recalled and be "resentenced to a misdemeanor … unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id.*, subd. (b).)[17]

Hidden in the lengthy, fairly abstruse text of the proposed law, as presented in the official ballot pamphlet — and nowhere called to voters' attention — is the provision at issue in the present appeal. Subdivision (c) of section 1170.18 provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." Section 667, subdivision (e)(2)(C)(iv) lists the following felonies, sometimes called "super strike" offenses:

> "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

> "(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

> "(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

> "(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

---

[17] Proposition 47 also created a process whereby eligible persons who have already completed their sentences may have the particular conviction or convictions designated as misdemeanors. (§ 1170.18, subds. (f), (g).)

"(V) Solicitation to commit murder as defined in Section 653f.

"(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

The question is whether section 1170.18, subdivision (c) now limits a trial court's discretion to deny resentencing under the Act to those cases in which resentencing the defendant would pose an unreasonable risk he or she will commit a new "super strike" offense. Defendant says it does. The People disagree. We agree with the People.[18]

"'In interpreting a voter initiative …, we apply the same principles that govern statutory construction. [Citation.]' [Citation.] '"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]"' [Citation.]" (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1014.) Thus, in the case of a provision adopted by the voters, "their intent governs. [Citations.]" (*People v. Jones* (1993) 5 Cal.4th 1142, 1146.)

To determine intent, "'we look first to the words themselves. [Citations.]'" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1014.) We give the statute's words "'a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute … in order to determine the scope and purpose of the

---

**18** We solicited supplemental briefing concerning Proposition 47. Among the questions we asked counsel to answer were whether defendant met the criteria for resentencing under section 1170.18 and, if so, whether we needed to determine the applicability, if any, of section 1170.18, subdivision (c) to resentencing proceedings under section 1170.126. We are satisfied it is appropriate for us to reach the issue of applicability regardless of whether defendant might obtain resentencing under Proposition 47.

27.

provision …. [Citation.]" [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute ….' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' [Citation.]" (*People v. Acosta* (2002) 29 Cal.4th 105, 112.) We "accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided.… [S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

"'"When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." [Citation.]' [Citation.]" (*People v. Hendrix* (1997) 16 Cal.4th 508, 512.) On its face, "[a]s used throughout this Code," as employed in section 1170.18, subdivision (c), clearly and unambiguously refers to the Penal Code, not merely section 1170.18 or the other provisions contained in Proposition 47. (See *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 164-165, 166; see also *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1254-1255; *People v. Vasquez* (1992) 7 Cal.App.4th 763, 766.)

This does not mean, however, that the definition contained in section 1170.18, subdivision (c) must inexorably be read into section 1170.126, subdivision (f). (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th at p. 1255.) "The literal language of a statute does not prevail if it conflicts with the lawmakers' intent …. [Citations.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1033-1034.) "'The apparent purpose of a statute will not be sacrificed to a literal construction.' [Citation.]" (*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733.) Rather, "the literal meaning of a statute must be in accord with its purpose." (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 927.) "[I]t is settled that the language of a statute should not be given a

28.

literal meaning if doing so would result in absurd consequences that the [voters] did not intend" (*In re Michele D.* (2002) 29 Cal.4th 600, 606), or would "frustrate[] the manifest purposes of the legislation as a whole …." (*People v. Williams* (1992) 10 Cal.App.4th 1389, 1393.) "To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment. [Citation.]" (*In re Michele D.*, *supra*, 29 Cal.4th at p. 606; accord, *People v. Ledesma* (1997) 16 Cal.4th 90, 95.)

Thus, "'we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [Citation.] We also '"refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1034.) We consider "the consequences that will flow from a particular interpretation" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387), as well as "the wider historical circumstances" of the statute's or statutes' enactment (*ibid*.). "'Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1034-1035.)

Proposition 47 and the Act address related, but not identical, subjects. As we explain, reading them together, and considering section 1170.18, subdivision (c) in the context of the statutory framework as a whole (see *People v. Acosta*, *supra*, 29 Cal.4th at p. 112; *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659; *In re Cindy B.* (1987) 192 Cal.App.3d 771, 781), we conclude its literal meaning does not comport with the purpose of the Act, and applying it to resentencing proceedings under

the Act would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures (see *People v. Disibio* (1992) 7 Cal.App.4th Supp. 1, 5).

As is evidenced by its title, the Act was aimed solely at revising the three strikes law. That law, as originally enacted by the Legislature, was described by us as follows:

> "Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses. [Citation.] The primary goals of recidivist statutes are: '… to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.' [Citation.]

> "By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring 'longer prison sentences and greater punishment' for second and third 'strikers.'" (*People v. Cooper* (1996) 43 Cal.App.4th 815, 823-824.)[19]

---

[19]     The foregoing applies equally to the three strikes initiative measure that added section 1170.12 to the Penal Code. The following statement of intent preceded the text of the statute in Proposition 184, which was approved by voters on November 8, 1994: "'It is the intent of the People of the State of California in enacting this measure to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.'" (See Historical and Statutory Notes, 50C West's Ann. Pen. Code (2004 ed.) foll. § 1170.12, p. 239.)

A few months before the November 6, 2012, election, the California Supreme Court observed: "One aspect of the [three strikes] law that has proven controversial is that the lengthy punishment prescribed by the law may be imposed not only when … a defendant [who has previously been convicted of one or more serious or violent felonies] is convicted of another serious or violent felony but also when he or she is convicted of any offense that is categorized under California law as a felony. This is so even when the current, so-called triggering, offense is nonviolent and may be widely perceived as relatively minor. [Citations.]" (*In re Coley*, *supra*, 55 Cal.4th at pp. 528-529.)

Clearly, by approving the Act, voters resolved this controversy in favor of strike offenders. Thus, one of the "Findings and Declarations" of the Act stated the Act would "[r]estore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of proposed law, § 1, p. 105.) Nowhere, however, do the ballot materials for the Act suggest voters intended essentially to open the prison doors to existing third strike offenders in all but the most egregious cases, as would be the result if the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) were engrafted onto resentencing proceedings under section 1170.126, subdivision (f). That voters did *not* intend such a result is amply demonstrated by the fact an indeterminate life term remains mandatory under the Act for a wide range of current offenses even if the offender does not have a prior conviction for a "super strike" offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), and that an inmate is rendered ineligible for resentencing under section 1170.126 for an array of reasons beyond his or her having suffered such a prior conviction (§ 1170.126, subd. (e)(2)).

The Act clearly placed public safety above the cost savings likely to accrue as a result of its enactment. Thus, uncodified section 7 of the Act provides: "This act is an exercise of the public power of the people of the State of California *for the protection of*

31.

*the health, safety, and welfare of the people of the State of California*, and shall be liberally construed to effectuate those purposes." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012), *supra*, text of proposed law, p. 110, original italics omitted, italics added.) As we explained in *People v. Osuna*, *supra*, 225 Cal.App.4th at page 1036, "Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]."

In contrast, Proposition 47 — while titled "the Safe Neighborhoods and Schools Act" — emphasized monetary savings. The "Findings and Declarations" state: "The people of the State of California find and declare as follows: [¶] The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment. This act ensures that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of proposed law, § 2, p. 70.) Uncodified section 15 of the measure provides: "This act shall be broadly construed to accomplish its purposes," while uncodified section 18 states: "This act shall be liberally construed to effectuate its purposes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, text of proposed law, p. 74.) Proposition 47 requires misdemeanor sentences for various drug possession and property offenses, unless the perpetrator has a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (Health & Saf. Code, §§ 11350, subd. (a), 11357, subd. (a), 11377, subd. (a); §§ 459.5, subd. (a), 473, subd. (b), 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (b).) Section 1170.18 renders ineligible for resentencing *only* those inmates whose current offense would now be a misdemeanor, but who have a prior conviction for a "super

32.

strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c).  (§ 1170.18, subds. (a), (i).)

Nowhere in the ballot materials for Proposition 47 were voters given any indication that initiative, which dealt with offenders whose current convictions would now be misdemeanors rather than felonies, had any impact on the Act, which dealt with offenders whose current convictions *would still be felonies*, albeit not third strikes.  For instance, the Official Title and Summary stated, in pertinent part, that Proposition 47 would "[r]equire[] resentencing for persons serving felony sentences for these offenses[, i.e., offenses that require misdemeanor sentences under the measure] unless court finds unreasonable public safety risk." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, official title and summary, p. 34.)  In explaining what Proposition 47 would do, the Legislative Analyst stated:  "This measure reduces penalties for certain offenders convicted of *nonserious and nonviolent property and drug crimes*.  This measure also allows certain offenders *who have been previously convicted of such crimes* to apply for reduced sentences." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.)  With respect to the resentencing provision, the Legislative Analyst explained:

> "This measure allows offenders *currently serving felony sentences for the above crimes*[, i.e., grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession] to apply to have their felony sentences reduced to misdemeanor sentences.  In addition, certain offenders who have already completed a sentence for a felony that the measure changes could apply to the court to have their felony conviction changed to a misdemeanor.  However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed.  In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime. Offenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement." (*Id*. at p. 36, italics added.)

Similarly, the arguments in favor of and against Proposition 47 spoke in terms solely of Proposition 47, and never mentioned the Act. The Argument in Favor of Proposition 47 spoke in terms of prioritizing serious and violent crime so as to stop wasting prison space "on petty crimes," stop "wasting money on warehousing people in prisons for nonviolent petty crimes," and stop California's overcrowded prisons from "incarcerating too many people convicted of low-level, nonviolent offenses." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument in favor of Prop. 47, p. 38.) The Rebuttal to Argument Against Proposition 47 reiterated these themes, and never suggested Proposition 47 would have any effect on resentencing under the Act. (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument against Prop. 47, p. 39.) Although the Rebuttal to Argument in Favor of Proposition 47 asserted 10,000 inmates would be eligible for early release under the measure, and that many of them had prior convictions "for serious crimes, such as assault, robbery and home burglary" (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument in favor of Prop. 47, p. 38), there is no suggestion the early release provisions would extend to inmates whose current offenses remained felonies under the Act. The same is true of the discussion of resentencing contained in the Argument Against Proposition 47. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument against Prop. 47, p. 39.)

In light of the foregoing, we cannot reasonably conclude voters intended the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) to apply to that phrase as it appears in section 1170.126, subdivision (f), despite the former section's preamble, "As used throughout this Code …." Voters cannot intend something of which they are unaware.

We are cognizant one of the Act's authors has taken the position Proposition 47's definition of "unreasonable risk of danger" applies to resentencing proceedings under the Act. (St. John & Gerber, *Prop. 47 Jolts Landscape of California Justice System* (Nov. 5,

34.

2014) L.A. Times <http://www.latimes.com/local/politics/la-me-ff-pol-proposition47-20141106-story.html> [as of Jan. 30, 2015].)  Looking at the information conveyed to voters, however, this clearly was not *their* intent and so an author's desire is of no import. (Cf. *People v. Garcia* (2002) 28 Cal.4th 1166, 1175-1176, fn. 5; *People v. Bradley* (2012) 208 Cal.App.4th 64, 83; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30.)

We are also mindful "it has long been settled that '[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof' [citation]. 'This principle applies to legislation enacted by initiative.  [Citation.]'  [Citation.]" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1015; accord, *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.)  Thus, we presume voters were aware "unreasonable risk of danger to public safety," as used in section 1170.126, subdivision (f), had been judicially construed as not being impermissibly vague, but as nevertheless having no fixed definition.  (*People v. Garcia* (2014) 230 Cal.App.4th 763, 769-770; *People v. Flores*, *supra*, 227 Cal.App.4th at p. 1075.)  Because nowhere in the ballot materials for Proposition 47 was it called to voters' attention the definition of the phrase contained in section 1170.18, subdivision (c) would apply to resentencing proceedings under the Act, we simply cannot conclude voters intended Proposition 47 to alter the Act in that respect.  Voters are not asked or presumed to be able to discern all potential effects of a proposed initiative measure; this is why they are provided with voter information guides containing not only the actual text of such a measure, but also a neutral explanation and analysis by the Legislative Analyst and arguments in support of and in opposition to the measure.  As we have already observed, none of those materials so much as hinted that Proposition 47 could have the slightest effect on resentencing under the Act.  (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th

at pp. 1255-1256 [legislative history of enactment included information bill would add definition of particular term to Public Contract Code].)[20]

We are asked to infer an intent to extend section 1170.18, subdivision (c)'s definition to proceedings under section 1170.126 because the phrase in question only appears in those sections of the Penal Code. We cannot do so. The only resentencing mentioned in the Proposition 47 ballot materials was resentencing for inmates whose current offenses would be reduced to *misdemeanors*, not those who would still warrant *second strike felony terms*. There is a huge difference, both legally and in public safety risked, between someone with multiple prior serious and/or violent felony convictions whose current offense is (or would be, if committed today) a misdemeanor, and someone whose current offense is a felony. Accordingly, treating the two groups differently for resentencing purposes does not lead to absurd results, but rather is eminently logical.

We recognize "[i]t is an established rule of statutory construction … that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings. [Citations.]" (*People v. Caudillo* (1978) 21 Cal.3d 562, 585, overruled on another ground in *People v. Martinez* (1999) 20 Cal.4th 225, 229, 237, fn. 6 & disapproved on another ground in *People v. Escobar* (1992) 3 Cal.4th 740, 749-751 & fn. 5; see *Robbins v. Omnibus R. Co.* (1867) 32 Cal. 472, 474.) We question whether Proposition 47 and the Act are truly in pari materia: That phrase means "[o]n the same subject; relating to the same matter" (Black's Law Dict. (9th ed. 2009) p. 862), and the two measures (albeit with some overlap) address different levels of offenses and offenders. In any event, "canons of statutory construction are merely aids to ascertaining

---

**20**    For the same reasons, we reject any suggestion the definition contained in section 1170.18, subdivision (c) was intended to clarify the true meaning of "unreasonable risk of danger to public safety" as used in section 1170.126, subdivision (f). (Cf. *Re-Open Rambla, Inc. v. Board of Supervisors* (1995) 39 Cal.App.4th 1499, 1511; *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1238.)

probable legislative intent" (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10); they are "mere guides and will not be applied so as to defeat the underlying legislative intent otherwise determined [citation]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1391).

The Act was intended to reform the three strikes law while keeping intact that scheme's core commitment to public safety. Allowing trial courts broad discretion to determine whether resentencing an eligible petitioner under the Act "would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) clearly furthers the Act's purpose. Whatever the wisdom of Proposition 47's policy of near-universal resentencing where *misdemeanants* are concerned — and "[i]t is not for us to gainsay the wisdom of this legislative choice" (*Bernard v. Foley* (2006) 39 Cal.4th 794, 813) — constraining that discretion so that all but the worst *felony* offenders are released manifestly does not, nor does it comport with voters' intent in enacting either measure.

Accordingly, Proposition 47 has no effect on defendant's petition for resentencing under the Act. Defendant is not entitled to a remand so the trial court can redetermine defendant's entitlement to resentencing under the Act utilizing the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c).[21]

---

[21]     Recently, the Third District Court of Appeal held section 1170.18, subdivision (c)'s definition of "'unreasonable risk of danger to public safety'" does not apply retroactively to defendants whose petitions for resentencing under the Act were decided before the effective date of Proposition 47. (*People v. Chaney* (2014) 231 Cal.App.4th 1391, 1395-1396, petn. for review pending, petn. filed Jan. 8, 2015.) *Chaney* did not decide whether Proposition 47's definition applies prospectively to such petitions. (*Chaney*, *supra*, at p. 1397, fn. 3.) Were we to conclude section 1170.18, subdivision (c) modifies section 1170.126, subdivision (f), we would agree with *Chaney* that it does not do so retroactively. We believe, however, that a finding of nonretroactivity inexorably leads to the possibility of prospective-only application, and that prospective-only application of Proposition 47's definition to resentencing petitions under the Act would raise serious, perhaps insurmountable, equal protection

37.

# DISPOSITION

The judgment is affirmed.

_____
DETJEN, J.

I CONCUR:


_____
LEVY, Acting P.J.

---

issues. "Mindful of the serious constitutional questions that might arise were we to accept a literal construction of the statutory language, and of our obligation wherever possible both to carry out the intent of the electorate and to construe statutes so as to preserve their constitutionality [citations]" (*People v. Skinner* (1985) 39 Cal.3d 765, 769), we rest our holding on the reasoning set out in our opinion, *ante*.

PEÑA, J.,

I concur in the judgment and the majority opinion with the exception of part III.  I agree defendant Ernest Lee Allen may not take advantage of Proposition 47's[1] newly enacted definition of "unreasonable risk of danger to public safety," as provided in Penal Code section 1170.18, subdivision (c) (1170.18(c)).  I do so not because there is any ambiguity in the language used in section 1170.18(c) or the notion that the statute does not mean what it says, i.e., that the new definition applies "throughout this Code."  Rather, in my view, there is no indication the electorate, in enacting section 1170.18(c), intended it to apply retroactively to resentencing determinations under Proposition 36, the Three Strikes Reform Act of 2012 (the Act).

**I.      After November 4, 2014, the definition of "unreasonable risk of danger" in Section 1170.18(c) applies throughout the Penal Code**

Section 1170.18(c) provides:  "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

This section and subdivision were enacted on November 4, 2014, when California voters passed Proposition 47, long past the time of defendant's resentencing hearing.  Unless the legislation was designed or intended to apply retroactively, the definition in section 1170.18(c) cannot apply to defendant.  This is the only inquiry we must make to resolve the issue of whether the definition in section 1170.18(c) applies to defendant.  However, the majority has opted to determine whether the new definition applies to any resentencing provisions under the Act, past, present, or future.  I respectfully disagree with the majority's analysis and conclusion on this broader issue.

---

[1]The Safe Neighborhood and Schools Act (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014)).

"'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law."' [Citations.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211-212.)

Where the statutory language is so clear and unambiguous, there is no need for statutory construction or to resort to legislative materials or other outside sources. (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371.) Absent ambiguity, it is presumed the voters intend the meaning apparent on the face of an initiative measure, and the courts may not add to the statute or rewrite it to conform to a presumed intent not apparent in its language. (*People v. ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301.)

In determining whether the words enacted here are unambiguous, we do not write on a blank slate. For example, in *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1255, the court stated there "is nothing ambiguous about the phrase 'as used in this code.'" It held the definition of "Emergency, as used in this code" applied to the entire Public Contract Code, and it was not limited to a particular chapter, article, or division of that code. Also, in *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 166, the court held: "The words 'as in this code provided' (Penal Code, § 182) refer to the Penal Code."

In a similar vein, the court in *People v. Leal* (2004) 33 Cal.4th 999, 1007-1008, applied the plain meaning rule as follows:

2.

"The statutory language of the provision defining 'duress' in each of the rape statutes is clear and unambiguous.  The definition of 'duress' in both the rape and spousal rape statutes begins with the phrase, 'As used in this section, "duress" means ....'  (§§ 261, subd. (b), 262, subd. (c).)  This clear language belies any legislative intent to apply the definitions of 'duress' in the rape and spousal rape statutes to any other sexual offenses.

"Starting from the premise that in 1990 the Legislature incorporated into the rape statute a definition of 'duress' that already was in use for other sexual offenses, defendant argues that the Legislature must have intended its 1993 amendment of the definition of 'duress' in the rape statute, and the incorporation of this new definition into the spousal rape statute, to apply as well to other sexual offenses that use the term 'duress.'  Defendant observes:  'The legislative history does not suggest any rationale for why the Legislature would want its 1993 amendment of the definition of "duress" to apply only to rape so that it would have one meaning when the rape statutes use the phrase "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" but another, much more expansive meaning when the identical phrase is used in the statutes defining sodomy, lewd acts on a child, oral copulation and foreign object rape.'

"But the Legislature was not required to set forth its reasons for providing a different definition of 'duress' for rape and spousal rape than has been used in other sexual offenses; it is clear that it did so.  'When "'statutory language is ... clear and unambiguous there is no need for construction, and courts should not indulge in it.'"  [Citations.]  The plain meaning of words in a statute may be disregarded only when that meaning is "'repugnant to the general purview of the act,' or for some other compelling reason ...."  [Citations.]'  [Citation.]  As we said in an analogous situation:  'It is our task to construe, not to amend, the statute.  "In the construction of a statute ... the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted ...."  [Citation.]  We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.'  [Citation.]"

The majority pays lip service to the plain meaning rule and then ignores it.  While acknowledging the language used is unambiguous, it nonetheless engages in statutory construction to determine whether the electorate really intended to say what it actually enacted.  The end result is a rewriting of the statute so that it comports with the majority's

3.

view of what the voters really intended. The majority has rewritten section 1170.18(c) so that it now states: "*As used in this section only*, 'unreasonable risk of danger to public safety' means …." The majority does so without providing a compelling reason to do so and without showing the plain language used has a "'meaning [that] is "'repugnant to the general purview of the act.'"'" (*People v. Leal*, *supra*, 33 Cal.4th at p. 1008.) Because the Act had not previously defined the phrase "unreasonable risk of danger to public safety," the definition in section 1170.18(c) cannot be repugnant or contradictory to the Act, nor does the majority claim the definition is repugnant to the general purview of Proposition 47. For these reasons, I respectfully disagree with the majority on this part of the opinion.

## II. Section 1170.18(c) has no application to defendant's resentencing under the Act

I do concur in the result because there is nothing in Proposition 47 to indicate the definition enacted under section 1170.18(c) is to be applied retroactively to defendant under the Act.

I begin my analysis with section 3 of the Penal Code, which provides that "[n]o part of it is retroactive, unless expressly so declared." "Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear," section 3 provides the default rule. (*People v. Brown* (2012) 54 Cal.4th 314, 319.) Proposition 47 is silent on the question of whether it applies retroactively to proceedings under the Act. The analysis of Proposition 47 by the legislative analyst and the arguments for and against Proposition 47 are also silent on this question. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) pp. 34-39.) Because the statute contains no express declaration that section 1170.18(c) applies retroactively to proceedings under the Act, and there is no clearly implied intent of retroactivity in the legislative history, the default rule applies.

4.

Defendant cites *In re Estrada* (1965) 63 Cal.2d 740 to argue retroactive application.

In *Estrada*, the court stated:

> "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*In re Estrada*, *supra*, 63 Cal.2d at p. 745.)

One may argue that under the *Estrada* case, unless there is a "savings clause" providing for prospective application, a statute lessening punishment is presumed to apply to all cases not yet reduced to a final judgment on the statute's effective date. (*In re Estrada*, *supra*, 63 Cal.2d at pp. 744-745, 747-748.) However, the *Estrada* case has been revisited by our Supreme Court on several occasions. In *People v. Brown*, *supra*, 54 Cal.4th at page 324 the court stated: "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." "The holding in *Estrada* was founded on the premise that '"[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law."'" (*Id.* at p. 325.) In *Brown*, the court did not apply the *Estrada* rule because "a statute increasing the rate at which prisoners may earn credits for good behavior does not

5.

represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent." (*People v. Brown*, *supra*, at p. 325.)

Similarly here, *Estrada* does not control because applying the definition of "unreasonable risk to public safety" in Proposition 47 to petitions for resentencing under the Act does not reduce punishment for a particular crime.[2]  Instead, the downward modification of a sentence authorized by the Act is dependent not just on the current offense but on any number of unlimited factors related to the individual offender, including criminal conviction history, disciplinary and rehabilitation records, and "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (g)(3).)

Because section 1170.18(c)'s definition of "unreasonable risk of danger to public safety" does not apply retroactively to the Act, the sentencing court applied the correct standard in exercising its discretion to not resentence defendant.[3]  Since defendant has failed to show an abuse of that discretion, I concur in the majority's affirmance of the judgment.



PEÑA, J.

---

[2]For this reason, *Holder v. Superior Court* (1969) 269 Cal.App.2d 314, also relied upon by defendant, does not apply because its analysis and conclusion were based on *Estrada* prior to its clarification by subsequent California Supreme Court cases.

[3]Recently in *People v. Chaney* (2014) 231 Cal.App.4th 1391, the Third District Court of Appeal held the definition of "unreasonable risk of danger to public safety" as provided in section 1170.18(c) does not apply retroactively.  I agree.